COLUMBIA MILLING COMPANY v. RUSSELL COMPANY.

[42 South. Rep., 233.]

CONTRACT. *Writing. Parol evidence to vary. Sales.*

In a suit for the price of goods sold upon a written contract, parol evidence of a promise by the seller to do something in relation to the transaction made before the contract was entered into and not expressed therein, is inadmissible where the contract was not procured by fraud.

From the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

The Columbia Star Milling Company, a corporation, the appellant, was plaintiff in the court below; the Russell Company, a corporation, the appellee, was defendant there. From a judgment which, although in favor of plaintiff, was for less than it demanded, being for a sum tendered by defendant as the limit of its liability, the plaintiff appealed to the supreme court.

The appellee, the Russell Company, being in the mercantile business at Vicksburg, purchased from appellant a car load of flour under a written contract which was signed by both parties, appellant being represented by its traveling representative, one Brand. The contract was as follows:

"April 10, 1905. Columbia Star Milling Co.: Ship to Russell Co., at Vicksburg, Miss., over M. & O. R. R., at once, terms open, 50 bbls., 50 half bbls., 600 scks., 'Elect' flour, basis $5.85, delivered Vicksburg."

The word "Elect" referred to the brand of flour. The appellee some months previously had purchased a consignment of this flour from the above mentioned representative, and had experienced difficulty in selling it because of its being a new and unknown quality to the local market. As a result appellee did not enter into the contract until induced by the oral promises of the representative, Brand, that appellant would adver-

tise the flour in the newspapers published in Vicksburg, and would send two experienced salesmen there to make a house to house canvass and solicit sales, and thus introduce the flour. These promises were made prior to the execution of the written contract of sale. The flour was shipped as ordered, and on its arrival was accepted by appellee. Appellant failed to advertise the flour or to send the special salesmen to canvass the city and solicit sales. Appellee, declining to pay the contract price, $891.37, and alleging that it had suffered a loss of $120 because of appellant's failure to comply with the verbal promises of its representative, tendered to appellant $771.37, the amount of appellant's demand less said damages. Appellant refused to accept the tender and sued for the full contract price. On the trial it was agreed that $120 was the amount of appellee's loss, to be deducted from the contract price, if appellee should be adjudged entitled to any deduction at all. Over the objection of appellant the appellee was allowed to offer evidence of the verbal promises made by appellant's representative, Brand. To meet this, and in explanation of the appellant's failure to comply with the promises made by its representative before the making of the written contract, Brand testified that the omission resulted from the illness of one of the special salesmen of his company, and that on learning such illness he had informed appellee of the inability of the salesmen to be in Vicksburg, and subsequently, some months after appellee had accepted the flour, he informed appellee that if there was possibility of his losing money under the contract, appellant would take back the flour, but appellee made no reply. No explanation was made of appellant's failure to advertise the flour. After the appellant closed its case the appellee moved the court below to exclude the evidence introduced by appellant and to render judgment against appellee for only the tendered sum of $771.37. The court sustained this motion and rendered judgment accordingly. On appeal the appellant assigned as error

the action of the court below in admitting parol proof to vary the terms of the written contract.

*Brunini & Hirsch,* for appellant.

The court below refused to apply in this case the academic rule of law to the effect that parol evidence is inadmissible to vary, contradict or qualify a written contract. The facts show that the Columbia Star Milling Company, the appellant, in November, 1904, sold a car load of flour to the appellee, the Russell Company; and in April, 1905, the appellant sold a sec-ond car load of the same brand of flour to the appellee. It is not denied that the appellee had to be importuned earnestly and strenuously before it could be induced to purchase the second car load of flour, and that as an inducement appellant's representative orally promised to advertise the flour in the Vicksburg papers. But subsequently the appellant and the appellee evidenced the contract by writing, and such oral argeement constituted no part of the written contract. Sickness of one of the special salesmen who were to make the house to house canvass prevented a compliance by appellent with its oral promise. The appellee claims that by reason of appellant's failure to carry out this oral agreement it sustained a loss of $120, and it is agreed that if this court affirms the decision of the court below that appellee will be entitled to the credit of $120 and appellant be entitled to the contract price less this sum. In other words $120 is the total sum in dispute.

We contend that appellee was not entitled to this deduction of $120 because the loss had no foundation in the written contract, which was complete upon its face. The evidence in support of the loss of $120 was objected to by appellant when introduced, and the point was further preserved by the motion of appellant to exclude the same.

It is contended by counsel for appellee, the Russell Company, that the oral agreement in regard to the advertising in the newspapers and the house to house canvass by special salesmen of

appellant, was admissible in evidence, because the failure on the part of appellant to fulfill its promise in this regard was a fraud upon appellee. And to sustain this contention counsel for appellee seem to rely solely upon the case of *Howie* v *Platt,* 83 Miss., 15 (s.c., 35 South. Rep., 216).

We do not think that this case is in point, for there is nothing therein to change the general rule announced in *Cocke* v. *Blackburn,* 58 Miss., 537, citing *Wren* v. *Hoffman,* 41 Miss., 616, to the effect that where parties embody their mutual agreements in a formal written instrument, it must be taken as containing all the evidence of which they desired to preserve, and in the absence of fraud or mistake, it is not competent to add to or take from it by parol evidence. To the same effect is *Bond* v. *Lynn,* 72 Miss., 932 (s.c., 18 South. Rep., 428); 30 L. R. A., 441.

As regards the charge that there was fraud on the part of appellant our answer is that the facts do not sustain this. It is shown by the testimony of the representative, Brand, who made the oral promises and who also signed the written contract for appellant, that it was solely because of the sickness of one of the special salesmen that this part of the contract was not complied with. And althought the appellant failed to advertise, it is not shown that such failure resulted from any fraudulent motives. But aside from the facts, as a legal proposition we submit that false representations to constitute a fraud, must relate to some past or existing fact material in its nature.

It has frequently been held that a charge of fraud cannot be predicated upon a mere promise, nor upon a mere statement of intention which does not amount to a binding promise, either for the purpose of maintaining an action of deceit or for the purpose of avoiding the contract. 14 Am. & Eng. Ency. of Law, 47.

It may be added that the term "fraud" in our brief should be understood in its legitimate narrow sense, *i. e.*, a misrepresentation of a present or past fact; for although a much looser sig-

nificance has been occasionally intimated, it is obvious that an intent not to perform a promise, or a subsequent failure knowingly to perform an outside agreement not embodied in the subsequent writing up of a contract, cannot strictly be included in the term "fraud."    4 Wigmore on Evidence, sec. 2439.

With the above understanding of the word fraud, let us consider the case of *Howie* v. *Platt, supra.*    An examination of that case will show that the fraud of which complaint was there made was in the procurement of the contract; not, as here, a mere failure to carry out a promise.    WHITFIELD, C. J., speaking for the court in that case, said: "It is one thing to attempt to vary, alter or contradict the terms of a written contract once validly executed, and quite a different thing to show that the contract offered never had any legal existence because its execution was procured by fraud."

We submit in conclusion that no damage was proven by the Russell Company, the appellee; and we submit that there was no fraud in the procurement of the contract, there being merely a failure to perform certain things promised which were fully intended to be performed when the contract was made.    And as the written contract must be taken as embodying the entire understanding of parties, the action of the court below was erroneous and the judgment must be reversed.

*McLaurin, Armistead & Brien,* for appellee.
This case is controlled by the case of *Howie* v. *Platt,* 83 Miss., 15 (s.c., South Rep., 216). From the statement of facts· in that case it appears that the salesman of the plaintiffs tried to sell the goods to defendants who refused to buy on the ground that they did not handle such goods.    The salesman then went out of the store, but came back afterwards and said he had failed to place the goods in the town, and asked defendants again to take them, saying as an inducement that he would guarantee 33 1-3 per cent profit on them for three years if the stock was kept replenished, and that he would deposit the amount of the

order in any bank defendants would suggest to make the guarantee good. The court held on this state of facts that the contract never had any legal existence because its execution was procured by fraud. The facts here are very similar to those narrated above. Brand, witness for the appellant and the representative who made the promises and signed the contract, testified to the questions propounded as follows: "*Q.* How many times did you call on Russell before he agreed to buy this flour for his company? *A.* I could not say—possibly once or twice. *Q.* You all discussed the difficulty of selling the previous flour, didn't you? *A.* Yes, sir. *Q.* Russell didn't want any more flour from your mill just on straight terms, did he? *A.* No, sir. *Q.* You had to offer him some inducement to get him to take another car of flour, didn't you? *A.* Yes, sir. *Q.* And as an inducement to get him to give you this order for the second car of flour for his company, you promised him to advertise it in the papers, and in addition to send special salesmen to solicit sales from door to door to introduce the flour? *A.* I did. *Q.* Russell would not agree to give you this order for the second car load of flour until you made such promise? *A.* That is a fact. *Q.* That was the inducement by which you got the order, wasn't it? *A.* I presume so."

Under the circumstances the case of *Howie* v. *Platt, supra,* and the subsequent case of *Patten-Worshaw Drug Company* v. *Planters' Mercantile Company,* 86 Miss., 423 (s.c., 38 South. Rep., 209), must determine this case in our client's favor.

Counsel for appellant contend that a different doctrine has been announced by this court in the cases of *Wren* v. *Hoffman,* 41 Miss., 616; *Cocke* v. *Blackburn,* 58 Miss., 538, and *Baum* v. *Lynn,* 72 Miss., 932 (s.c., 18 South. Rep., 428). But those cases do not apply, for they recognize that there is no binding operation to a written contract if the same were procured by fraud. Hence they practically support our contention.

But counsel for appellant contend that fraud can only be

predicated on some past or existing fact material in its nature, and in support of such contention cite 14 Am. & Eng. Ency. of Law, 47.    An examination of this authority does not support the contention of counsel, because the illustrations given thereunder relate to fraud practiced by the purchaser of goods.    In fact, it would seem that this authority, on page 192, distinctly recites the law to be that a person cannot recover damages or avoid a contract because of false representations, unless he relied upon them and was thereby induced to act.    When it is shown that representations were false and material and were made fradulently, it will be presumed that they were relied upon.    And in such case the burden of proof is upon the party who made them to show that the other did not rely upon them.

The case of Patton-Worsham Drug Company v. Planters' Mercantile Company, supra, sets at rest all questions as to what fraud must relate.    It distinctly states that "Fraud vitiates all things and may be predicated of promises designed to entrap the unwary and never intended to be kept, as well as of the statements of existing facts."

We have in this case a very frank admission that a flour agent, desirous of introducing some new flour into a territory, practiced deception upon appellee in order to have him buy his flour, and subsequently after securing an apparent advantage by reason of the written contract in evidence, seeks under some technical rule of law to recover upon the contract which he confesses was fraudulently obtained.

The case should be affirmed because the appellant has received the full value of its flour and is merely asking for a benefit sought to be obtained by fraudulent representation.

MAYES, J., delivered the opinion of the court.

On the facts presented by this case, it was error in the trial court to permit parol proof to go to the jury of promises made by the appellant to do certain things not contracted to be done in the written contract.    This testimony could have been admitted

only for the purpose of showing that the contract was procured by fraud, and, when appellee accepted the flour after making the written contract, it waived whatever right it may have had to show that it was induced to make the contract by representations of appellee not embodied in the writing.    It cannot accept the goods under the written contract and, when sued for the price agreed to be paid, reduce that price by showing that appellee agreed to do something else not mentioned in the contract. To permit this to be done would be to add a new term to the written contract by parol testimony, and then to allow a recovery for a breach of the term thus added, and not mentioned in the writing as part of the contract.    The case of *Howie* v. *Platt,* 83 Miss., 15; 35 South. Rep., 216, is not in point here. In that case the purchaser defended on the ground that the contract was procured by fraud, and immediately countermanded the order for the goods as soon as he discovered that the agent selling the goods had not embodied in the written contract the promises that he had made.    *Wren* v. *Hoffman,* 41 Miss., 616; *Cocke* v. *Blackburn,* 58 Miss., 537; *Baum* v. *Lynn,* 72 Miss., 932 (s.c., 18 South. Rep., 428); 30 L. R. A., 441; *Drug Co.* v. *Mercantile Co.,* 86 Miss., 423 (s.c., 38 South. Rep., 209).

*Let the judgment be reversed and cause remanded.*